UNITED STATES FEDERAL DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAIL KASPER TELEVISION LLC and : <br> GAIL KASPRZAK a/k/a GAIL KASPER, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> CELEBRITY BOXING : <br> ENTERTAINMENT, LLC : <br> : <br> Defendant. : | Case No. 2:21-cv-03379 |

**DEFENDANT CELEBRITY BOXING ENTERTAINMENT, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MOTION TO STRIKE SCANDALOUS AND IMPERTINENT MATTER**

Defendant Celebrity Boxing Entertainment, LLC ("Celebrity Boxing,") by and through counsel, Bochetto & Lentz, P.C., submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs Gail Kasper Television LLC ("Gail Kasper Television") and Gail Kasprzak ("Gail Kasper" or "Ms. Kasper")'s Complaint and its Motion to Strike Scandalous and Impertinent Matter.

### I.     INTRODUCTION

This entire lawsuit arises out of a contract for five hundred dollars. Plaintiffs' entire claim rests on two pillars—(i) Gail Kasper Television's agreement to "lend" Ms. Kasper's services as a ring announcer to Celebrity Boxing, and (ii) the purported statement of Damon Feldman, CEO of Celebrity Boxing (which Plaintiffs fail to set forth) purportedly "implying" that Ms. Kasper was not qualified to serve as a ring announcer and that by not answering an email she was "unprofessional."

Based on these two pillars, Plaintiffs raise five claims: (i) breach of contract, (ii) infringement of statutory right of publicity, (iii) appropriation of name and likeness, (iv) defamation, and (v) trade libel.

However, this Court does not have subject matter jurisdiction over Plaintiffs' claims. Plaintiffs fail to articulate damages establishing that they have met the amount in controversy requirement for diversity jurisdiction. Again, this entire Complaint arises out of a five-hundred-dollar contract. Plaintiffs does not articulate, calculate, or estimate any of the purported categorical damages arising out of this alleged breach. Instead, Plaintiffs simply speculate in their *ad damnum* clauses that the claims are valued at $75,000 or higher.

Even if this Court had proper subject matter jurisdiction over Plaintiff's claims, Counts II–V must be dismissed because they fail to state a claim under Rule 12(b)(6).

Plaintiffs' claims for misappropriation of Ms. Kasper's name and likeness (Counts II and III) are frivolous and should be dismissed upon the express language of the parties' agreement ("the Agreement"), attached hereto as Exhibit "A," which explicitly authorizes use of Ms. Kasper's name and likeness in connection with her role as the ring announcer.

Plaintiff's claims for defamation and trade libel are likewise without merit. The "defamatory statement," which is not set forth in full, is (i) a statement of opinion, not fact, (ii) not capable of defamatory meaning, even accounting for the "implications" alleged by Plaintiff, who admits that she has no prior experience in this field, and (iii) not made by a party to this action. Moreover, Plaintiff Kasper is admittedly a public figure and therefore must show that the statements were made with actual malice, i.e. actual knowledge or reckless disregard of their falsity, which she has failed to alleged.

In addition, Defendant hereby moves to strike scandalous and impertinent material set forth in paragraph 70 of Plaintiff's Complaint. These vicious allegations have no evidentiary bearing on Plaintiffs' claims, have no relevance to the legal standard of "actual malice," and appear to be pled for the sole purpose of embarrassing, harassing and intimidating a non-party.

Defendant respectfully requests this Court dismiss Plaintiff's Complaint with prejudice. Further, Defendant respectfully requests that this Court strike Plaintiffs' Complaint, remove the same from the docket, and refile the Complaint without the allegations in paragraph 70.

## II.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

In or around June 2020, Plaintiff Gail Kasper Television and Defendant Celebrity Boxing entered into the Agreement. Importantly, Gail Kasper herself was not a signatory to the Agreement. Instead, the Agreement arranged for Gail Kasper Television to "lend" the services, name and likeness of Gail Kasper in connection with a Celebrity Boxing Event ("the Event") and promotion of the same.

As Ms. Kasper alleges, she is a television host and public speaker who is well-known in Philadelphia. As she concedes, this Event was to be her very first experience as a ring announcer. The Agreement contemplated that Ms. Kasper would make several social media posts, reference the upcoming Event on air, and attend the Event as the "ring announcer," a position in which she would remain ring-side and announce the status of the match. Notably, this position is not an arduous one. The typical boxing match lasts less than half an hour. Accordingly, Celebrity Boxing agreed to pay Ms. Kasper $500.00 and to cover her hotel costs for the evening.

Ultimately, the event for which Ms. Kasper was contracted was cancelled due to Covid restrictions. Celebrity Boxing, in its usual course of business, scheduled another unrelated event, much larger in scope, which was nationally televised. As such, Celebrity Boxing chose another

ring announcer who had participated in thousands of boxing events. Ms. Kasper was paid in installments, with $200 up front and the balance of the $500 to be paid on the day of the event for which she was contracted.

Notably, Ms. Kasper was not a party to the contract but now seeks to obtain retribution for the purported breach of contract. As discussed below, contract law is not punitive and Ms. Kasper's claims are accordingly misplaced.

Plaintiffs also take issue with statements allegedly made by Damon Feldman, CEO of Celebrity Boxing. Plaintiffs do not allege the entirety of the statement, instead pulling portions of the alleged Facebook comment and arguing that its implications—devoid of context—are defamatory.

### III. LEGAL STANDARD

#### a. Standard of Review on Motion to Dismiss

##### i. Lack of Subject Matter Jurisdiction

In order for this Court to have subject matter jurisdiction over Plaintiff's claims, the Complaint must establish either (i) a question of federal law or (ii) diversity jurisdiction. Plaintiff asserts diversity jurisdiction, which requires a showing that the parties reside in separate states and that the amount in controversy exceeds $75,000. *See* 28 U.S. Code § 1332.

It is Plaintiff's burden, as the party seeking to assert the jurisdiction of this Court, to establish that the amount in controversy requirement is met **to a legal certainty.** *Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 398 (3d Cir. 2004).

Where damages as alleged in the Complaint are "categorical" damages, as opposed to figures or sums, this Court must look to state law to determine how such categorical damages should be evaluated in the context of subject-matter jurisdiction. *Id.*

Doubts as to the sufficiency of the amount-in-controversy **must** be resolved in favor of remand. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004). As this Court has emphasized, the amount-in-controversy requirement of diversity jurisdiction reflects the intent of Congress to *limit* jurisdiction in diversity cases. *Id.*

      ii.  **Failure to State a Claim—12(b)(6)**

With respect to Counts II—V, as set forth more fully below, Plaintiffs have failed to state a claim upon which relief may be granted and, accordingly, these claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts conduct a two-part analysis to determine whether dismissal is appropriate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Circ. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210–211. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiffs have a plausible claim for relief. *Id.* at 211. Determining whether a complaint states a plausible claim for relief requires the reviewing court to draw on its judicial experience and common sense. *Id.*

**IV.   ARGUMENT**

      a.  **Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction—failure to satisfy amount-in-controversy requirement**

Plaintiffs' allegations regarding the amount in controversy reaching $75,000 fall well short of legal certainty. Indeed, Plaintiffs admit that only $300.00 remain due under the terms of the Agreement.

Plaintiffs' alleged categorical damages for damage to reputation, lost income, and use of name and likeness are pled as "exceeding $50,000," with no factual basis for this supposition. See Plaintiffs' Complaint at ¶54. Speculative categorical damages without any factual support are insufficient to meet the legal certainty standard. As this Court recently ruled, "Defendant's argument that damages 'could' exceed $75,000 or that it is 'certainly possible' to exceed $75,000 does not prove it is legally certain the amount in controversy exceeds $75,000." *Sciarrino v. State Farm Fire & Cas. Co.*, 476 F.Supp.3d 91, 99 (E.D. Pa. 2020).

Moreover, "estimations of the amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004).

The alleged public exposure and future income to Plaintiff Gail Kasper purported to result from Defendant's breach of contract are not recoverable. Plaintiffs' claim that the alleged breach "deprived Gail Kasper of the opportunity to gain experience as a Ring Announcer and thereby actively pursue additional opportunities to serve in that capacity and obtain increased income therefrom." This argument is fatally flawed for several reasons. First, Gail Kasper was not a party to the contract and cannot recover consequential damages alleged to flow from its breach. In addition, Plaintiffs fail to set forth what these opportunities may be and fails to provide even an estimation of what income would result. Given that the instant "opportunity" provided for income of $500.00, it can reasonably be concluded that Ms. Kasper would have to

book 150 similar events, at $500.00 payment each, to reach the $75,000 threshold. Plaintiffs have not provided any facts to support the contention that such opportunities were or are available in general, let alone available to Ms. Kasper specifically.

Moreover, the language of the Agreement belies any allegations of consequential damages flowing from the alleged breach of contract. With respect to any "future" income contemplated by Plaintiff, the Agreement specifically states that **no** future income is provided for under this contract. Instead, the parties agreed that future events would be subject to a separate agreement. See Exhibit "A" at ¶2 ("Future event fees shall be mutually agreed to by both parties in writing."). Consequently, Plaintiffs had no right to future income under this Agreement and cannot show to a legal certainty that "lost income" amounts to any more than $300.00.

Apart from mere conclusory allegations that Plaintiff Gail Kasper has suffered damage to her reputation, there are no facts to support any reputational damages—she claims to be an "internationally renowned speaker and in-demand television personality" - yet fails to articulate any effect Defendant's conduct has had upon her career. See Plaintiffs' Complaint at ¶1.

Similarly, Plaintiff Gail Kasper's claimed loss of "public exposure" is not recoverable under her breach of contract claim. Not only is Ms. Kasper not a party to the contract, but this was not consideration negotiated for or included in the Agreement. Plaintiffs cannot recover this loss from Celebrity Boxing merely because Ms. Kasper viewed it as an additional benefit flowing from the parties' contracted arrangement. Even if such damages were recoverable, Plaintiffs have not alleged any facts to support the contention that the damage to Ms. Kasper's reputation exceeds $75,000. As stated above, the estimated damages for jurisdictional purposes must be "objective" and not "fanciful" or "wishful thinking." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004).

In addition, as set forth, Plaintiffs' claims of defamation fail and should be dismissed, accordingly dismissing any potential claim for reputational damage.

Likewise, Plaintiffs' claim for punitive damages arising out of alleged defamation is wholly without merit. A claim for punitive damages without factual support for punitive damages—or factual support for the amount of the underlying claim—is insufficient to uphold diversity jurisdiction: "[W]e find unconvincing Defendant's assertion that 'punitive damages ... here would put an individual plaintiff's claims over the $75,000 jurisdictional limit.' We find that Defendant has simply failed to carry its burden of proving to a legal certainty that the claims exceed the $75,000 jurisdictional threshold." *Friel v. Stonebridge Life Ins. Co.,* 2:08-CV-04064, 2008 WL 11515991, at *2 (E.D. Pa. Nov. 24, 2008). Further, as more fully set forth below, Plaintiffs' claim of defamation (for which Plaintiff's *ad damnum* clause seeks punitive damages) fails to state a claim on its face, let alone articulate facts supporting punitive damages. See Plaintiffs' Complaint at p. 16.

  **b. Counts II (Infringement of Statutory Right of Publicity) and III (Appropriation of Name and Likeness) should be dismissed because Plaintiff Kasper gave written consent for use of her name and likeness**

Plaintiffs' claims resting upon alleged misuse of her name and likeness are frivolous. The parties' Agreement has an entire section entitled "Use of [Gail Kasper]'s Name and Image," which reads in relevant part as follows:

> For the purposes of [Gail Kasper]'s performance hereunder, and in full consideration of the compensation paid herein, **[Gail Kasper Television] grants to [Celebrity Boxing] the non-exclusive use of Gail Kasper - her name, likeness, appearance, voice and all other uses associated with [Gail Kasper] and [Gail Kasper Television]'s right of publicity and related rights - and releases [Celebrity Boxing] for any and all claims, actions, liability and

> other causes of action relating to [Celebrity Boxing]'s use thereof.
>
> **[Celebrity Boxing] shall be entitled to use the name, image, likeness, appearance and voice of [Gail Kasper Television] in connection with the rights and obligations set forth herein, and in accordance with the terms and conditions herein.** [Gail Kasper]'s and [Gail Kasper Television]'s name may not be used or associated either directly or indirectly, with any product or service without prior written consent. All uses of [Gail Kasper]'s and [Gail Kasper Television]'s name, image, likeness and appearance granted hereunder shall be the sole and exclusive property of [Celebrity Boxing], including but not limited to any and all television, cable, internet, video, and other media now existing or hereafter devised, and no rights or usage thereof shall be conveyed to [Gail Kasper Television].

See Exhibit "A" at ¶5 (emphasis added).

The terms of this Agreement could not be more clear. Plaintiffs agreed, in writing, that Celebrity Boxing was entitled to use Ms. Kasper's name, likeness, and appearance in connection with the Celebrity Boxing Event. There were no additional products or services for which Celebrity Boxing used her name or likeness, nor do Plaintiffs allege that Gail Kasper's name or likeness were used for any purpose not connected with the Celebrity Boxing Event. Plaintiff does not and cannot plead any factual basis supporting the contention that Celebrity Boxing was required to obtain additional written consent for any other use of Ms. Kasper's name or likeness.

Moreover, Count II, for infringement of the statutory right of publicity under 42 Pa.Ann.Stat. Section 8316, requires a showing of "actual knowledge" of unauthorized use. See 42 Pa. CSA § 8316(d): "No person, firm or corporation, including their employees and agents, in the business of producing, manufacturing, publishing or disseminating material for commercial or advertising purposes by any communications medium shall be held liable under this section unless they had actual knowledge of the unauthorized use of the name or likeness of a natural person as prohibited by this section." Here, not only did Plaintiffs waive all claims against

9

Defendant in connection with the use of Ms. Kasper's name and likeness, but there are no factual allegations that any such misuse was made with "actual knowledge of the unauthorized use."

Accordingly, Plaintiffs' claims that Ms. Kasper's name and likeness were used without prior consent, including Counts II and III, are frivolous and should be dismissed.

### c. Counts IV (Defamation) and V (Trade Libel) should be dismissed because the statements Plaintiffs plead as "defamatory" are non-actionable statements of opinion made by a non-party

Plaintiffs' claims of Defamation and Trade Libel fail for a number of reasons: (i) Plaintiffs fail to articulate an actual statement, (ii) the statement is opinion, not fact, (iii) even if the statement were of a factual nature, it is not defamatory, and (iv) the "defamatory statement" was not made by Defendant Celebrity Boxing.

The "statements" in question are not plead in the Complaint. Plaintiffs have quoted piecemeal from the purported quotation, which is alleged to have been in writing, without inclusion of the written statement nor a full and complete quotation of the statement in context. Plaintiffs allege that the defamatory nature of the statement was "implied," but do not quote the full statement nor the conversation which allegedly occurred on Plaintiff Kasper's Facebook page. Defendant cannot, of course, defend against a statement (nor the implications thereof) which it has not seen and which Plaintiffs have failed to set forth in the Complaint. However, even in the absence of context, it is clear that these statements are not defamatory. Plaintiffs' claims for defamation and trade libel rest on the following:

> On or about May 25, 2021, Mr. Feldman, on behalf of Defendant, stated publicly in a post on Ms. Kasper's Facebook page that Ms. Kasper could no longer be the Ring Announcer because "in this business you have to start at the bottom," which clearly conveyed to all viewers of the message that Ms. Kasper was not qualified to serve

>as the Ring Announcer for the Event to occur in June 2021 (the "Defamatory Statement").
>
>The Defamatory Statement was a false statement of fact because Ms. Kasper was in fact qualified and capable of acting Ring Announcer for the Event.
>
>Mr. Feldman also falsely stated, as part of the Defamatory Statement, that Ms. Kasper "did not respond" to an alternative offer made by Celebrity Boxing, which was also false and implied to viewers of the statement that Ms. Kasper was unprofessional.

Plaintiffs' Complaint at ¶36.

Plaintiffs are required to show that the statements—(i) "in this business you have to start at the bottom" and (ii) that Ms. Kasper "did not respond"— are (1) capable of defamatory meaning, (2) factual in nature, and (3) made with actual malice.

Under Pennsylvania law, in order to recover on a claim for defamation, a plaintiff must prove the following elements:

> 1. The defamatory character of the communication;
> 2. Its publication by the defendant;
> 3. Its application to the plaintiff;
> 4. The understanding by the recipient of its defamatory meaning; and
> 5. The understanding by the recipient of it as intended to be applied to the plaintiff.

*Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citations omitted).

Procedurally, at the outset, the Court must determine whether a statement is capable of defamatory meaning. *Id.* "Whether the contested statements are capable of defamatory meaning is a question of law for the court" to decide. *Blackwell v. Eskin*, 916 A.2d 1123, 1125 (Pa. Super. 2007). "In reaching this conclusion, the court must view the statements in context[.]" *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987) (citation omitted). "The touchstone in determining whether a statement is capable of defamatory meaning is how the statement would be interpreted by the average person to whom it is directed." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 479

(E.D. Pa. 2010). A statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014); *see also Zartman v. Lehigh County Humane Society*, 482 A.2d 266, 268 (Pa. Super. 1984).

**The statement "must do more than merely or embarrass or annoy . . . . it must provoke the kind of harm which has grievously fractured one's standing in the community of respectable society." *Id.* (citation, internal quotation marks, and alteration omitted).** Here, even if the "implications" of Mr. Feldman's statements are both attributed to Defendant and are taken as true, Plaintiffs have not adequately pled that they have defamatory meaning. Plaintiff does not and cannot show that a comment regarding her experience in the boxing industry (which she admits she does not have) has grievously fractured her standing in the community. Likewise, a statement that Ms. Kasper "did not respond" does not rise to the level of harm required for a statement to have defamatory meaning.

Even if a statement could have a defamatory meaning, which these statements do not, statements which reflect opinion—rather than fact—are not actionable. "Importantly, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law[,]" and "[i]n order for an opinion to be deemed capable of defamatory meaning under Pennsylvania law, it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion . . . Whether a statement qualifies as a true opinion or an 'opinion' which implies the existence of undisclosed derogatory facts is a question of law to be resolved by the Court." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477, 481 (E.D. Pa. 2010) (internal quotations omitted); *see also* See *Mzamane*, 693 F. Supp. 2d at 481 ("Kurowski v. Burroughs, 994 A.2d 611, 619-20 (Pa. Super. Ct. 2010) (affirming the trial court's grant of

summary judgment where allegedly defamatory remarks were deemed non-actionable statements of opinion).

Where, as here, a plaintiff claims that the opinion statement is defamatory by implication, the plaintiff must still demonstrate that the implication is defamatory *in context*. The context pled by Plaintiffs does not imply any defamatory meaning—instead, they argue that the implication Ms. Kasper was unqualified is defamatory. Such an argument cannot stand when (i) Plaintiff admits that she has no experience as a ring announcer and (ii) this implication does no more than embarrass or annoy the reasonable person. Likewise, the implication that Ms. Kasper is "unprofessional" because she does not respond to correspondence does not rise to the level of grievous harm that this claim requires.

Interestingly, Plaintiffs ignore the heightened requirement of actual malice required for a public figure to claim defamation. Plaintiff Gail Kasper, to whom the statement was allegedly directed, is obviously a public figure.[1] As Plaintiff concedes, she is "an internationally renowned speaker and in-demand television personality" who has repeatedly appeared on national television and who hosts a local show with over eight million annual viewers. See Plaintiffs' Complaint at ¶¶1, 11–16. A public figure plaintiff must prove that the statement was false and

---

[1] The Supreme Court differentiated between public and private figures (and, consequently, determined that the actual malice standard applied to public, but not private figures) on two grounds:
> First, public officials and public figures have "greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. [*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).] Because private individuals have less access to effective self help, such individuals are more vulnerable to injury and the state has a correspondingly greater interest in protecting them.
> More importantly, the Court in *Gertz* stated that individuals who seek public office or who are public figures have assumed the risk that in the course of reporting and commenting on a well known person or public controversy, the press may inadvertently make erroneous statements about them. Thus those individuals are less deserving of protection. *See id.* at 344–45, 94 S.Ct. at 3009-10; *see also Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 164, 99 S.Ct. 2701, 2705, 61 L.Ed.2d 450 (1979).

*Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1081 (3d Cir. 1985).

that the statement was made with actual malice *Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 459 (E.D. Pa. 2017), *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 490 (1975) (explaining that in cases involving defamed public official or public figure, plaintiff must prove "not only that the publication is false but that it was knowingly so or was circulated with reckless disregard for its truth or falsity"). "Actual malice means knowledge that the statement was false or reckless disregard of whether it was false or not." *Id*. (alterations omitted).

Actual malice does **not** mean, as Plaintiffs seem to suggest, that the declarant was mean-spirited or ill-intentioned. Malice involves knowledge of falsity only. Plaintiffs' only allegation regarding "actual malice" concerns the purportedly soured relationship between Celebrity Boxing's CEO and Ms. Kasper. See Plaintiff's Complaint at ¶70. Plaintiffs' attempt to misconstrue this standard with scandalous material is a misleading representation of the law.

As Plaintiffs concede, the "defamatory statement" was allegedly made by Mr. Feldman, Defendant's CEO. Plaintiffs allege no facts to support that Mr. Feldman made the statement on behalf of Defendant apart from a mere conclusory allegation. See Plaintiffs' Complaint at ¶36. To the contrary, Plaintiff concedes that Mr. Feldman made the alleged post from his individual Facebook page. See Plaintiffs' Complaint at ¶36.

d. **Motion to Strike**

Rule 12(f) permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f).

Plaintiffs' allegations in paragraph 70 of the Complaint are a vicious and highly unprofessional attempt to harass Mr. Feldman, a non-party to this action. Mr. Feldman's purported conduct has no bearing whatsoever on Plaintiff's claims. Indeed, Plaintiffs appear to purposefully misconstrue the actual malice standard so as to plead these heinous facts.

Defendant is prejudiced by this allegation as it (i) confuses the issues before the finder of fact, (ii) misstates the law, and (iii) attempts to conflate Mr. Feldman's conduct with a legal standard having nothing to do with ill intentions or mean-spirited conduct. This allegation serves no purpose other than to inflame the passions of the fact-finder. Indeed, its purpose is to prejudice the finder of fact against Defendant Celebrity Boxing based on the unrelated conduct of its CEO within his familial and romantic relationships.

Accordingly, Defendant respectfully requests that this Court strike paragraph 70 from the Complaint, remove it from the docket, and, should the Court not dismiss Plaintiff's Complaint in its entirety, to refile the Complaint without paragraph 70.

## V.  CONCLUSION

Based on the foregoing, Defendant respectfully requests (i) that this Court dismiss Plaintiffs' Complaint with prejudice and (ii) strike the scandalous and impertinent matter from the record by entering an Order in substantially the form submitted herewith.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Date: September 14, 2021

By: George Bochetto            .
George Bochetto, Esquire
Kiersty DeGroote, Esquire
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
*Attorneys for Defendant, Celebrity Boxing Entertainment, LLC*